We've got one last case on the argument calendar this afternoon. Ctr. for Biological Diversity v. USFWS And we've got a rather complicated setup here. We've got splits on both sides. And I guess we've got a 12 and an 8 with the government going first. Is that what I've got? That's correct, Your Honor. Okay. I'll call the case Ctr. for Biological Diversity v. USFWS. And is it the government going first? Ms. Yao, is that right? Yes. Excuse me, Your Honor. I apologize. My video is not on. There's one more counsel to be added. Oh. I'm looking at four counsel. Who are we waiting on still? We do see them. Oh, I'm sorry. Okay, then we're good. I apologize. I apologize. Not to worry. If we're all set, we're all set. When you're ready. Yes, Your Honor. May it please the Court. My name is Amelia Yowell on behalf of Federal Appellants. With the Court's permission, I would like to reserve three minutes of my time for rebuttal. Okay. You try to keep track and I'll try to keep track and help you. Thank you. Hard rock mining in the United States is governed by the Mining Law of 1872. The lands here are open to entry under the Mining Law and the other federal land statutes. The Mining Law exists today largely unchanged from the time that Congress enacted it during the Grant Administration. Congress intended the Mining Law to provide a mechanism for the development of valuable mineral deposits like copper for the benefit of the country. Federal agencies have long understood the Mining Law to allow miners to use open federal lands for mining operations, including for the storage of waste rock and tailings that are necessarily produced when extracting valuable mineral deposits. This case concerns the U.S. Forest Service's approval of Rosemont's plan to mine a very large copper deposit on open federal lands. In doing so, the Service correctly recognized that Rosemont's mining operations are authorized by the Mining Law. The Service also correctly recognized that under the Organic Act, it has the authority to impose reasonable rules and regulations on Rosemont's surface use. Instead of crediting the Service's careful application of its dual mandate, the District Court here imposed a brand new requirement on the Service to investigate some of the validity, some of Rosemont's mining claims to determine the validity. Let me ask you this, putting to one side whose responsibility it might be to establish validity of the claims, is it the government's position that in order for this waste rock and these tailings to be put on the subject land, that these should be valid claims? No, Your Honor. The government's position is that... Okay, let me ask you this then. It is the government's position that these can be invalid claims and nonetheless, the waste rock may be deposited upon invalid claims? The government's position is that the validity of the claims doesn't matter when the government is looking at approving a mining plan of operations. Let me interrupt. I want to make sure how extreme the government's position is. If it were shown that these claims are invalid and that the waste rock is going to be deposited on invalid claims, would the government nonetheless be allowed to approve this plan? Yes, Your Honor. That doesn't strike me as very... And you're doing it under Section 22? I don't understand how the government can get that far. I understand how the government can argue that, well, maybe we didn't need to establish them, but for the government to say these are invalid mining claims and nonetheless, we will permit the operator to deposit an enormous amount of waste rock and tailing on these claims despite their invalidity,  Sure, Your Honor. I think the important question, in fact, here is the fact that these lands are open to entry under the mining law. And because these lands are open, if the government were to determine that certain mining claims were invalid, that would simply mean that any other miner could come and restake those claims right back on the land. So it would be an empty exercise for the service to investigate claim validity on open lands in this situation. I'm sorry. I'm just sort of following on the same line of questioning. Your position, as I understand it, is they don't need to have claims for the waste rock area at all because, in your view, they have a valid claim for the area that they went to mine. And as incident to that, they can dump the rock on open land, regardless of whether it's claimed or not. Is that correct? Yes, Your Honor, that's correct. It's undisputed here that Rosemont has a large, valuable deposit of copper. And it's also undisputed that under the mining law, Rosemont has the right to mine that deposit of copper. In order to do so, it must produce waste rock and tailings to extract the copper. And that is also an undisputed fact. And so if the service were to deny Rosemont land to store its waste rock and tailings, that would, in effect, prohibit Rosemont from exercising its right under the mining law to mine these valuable deposits. And what authority, in your view, does the service have to take into account? It's not that they can do anything that they want that's incident to mining. What is the authority of the service to restrict what they can do based on ecological sensitivity or other considerations? And where in the statute is that standard? So under the Organic Act, Your Honor, the service has authority to impose rules and regulations on mining, and the service has done so. In 1974, it promulgated mining regulations to regulate mines like Rosemont, and those are found in 36 CFR 228, the Part A regulations. And if you look in Section 228.8, the service outlines a variety of things that it's looking at to see whether the mining operations minimize adverse environmental impacts. And so it looks at things like water quality, air quality, scenic value, reclamation. And, in fact, in 228.8, there's also a provision dealing with waste rock and tailings where the service looks at the waste rock and tailings and the location to see how those minimize adverse impacts. And in the record here, we see that the service, you know, required the service to comply with the regulations to Rosemont's proposed mining plan of operations. And, in fact, you know, required Rosemont to constrict the footprint and the location of its waste rock and tailings in order to minimize those adverse impacts. But the record of decision also said, this is on page 31, I think that you read the statute to prevent you from doing anything that would materially interfere with the mining operations, which I think in your brief you conceded is not the right standard. Can you address, I mean, what are we to make of the fact that the record of decision seems to contemplate a narrower understanding of the services authority than you now say that it has? Sure, Your Honor. There are a few stray statements in the record of decision that cite to the Surface Resources Act. And, you know, as we conceded in our brief, that's not the correct limit on the services, you know, regulatory authority here, but in multiple parts of the record, the service recognized, you know, the correct limit on its authority, you know, drives from the Organic Act and the dual mandate there. And we believe that the services path, you know, can reasonably be discerned from those statements. And the service recognized that while it cannot, you know, prohibit reasonable mining operations on federal lands, it can, you know, put in place many rules and regulations to ensure that those mining operations minimize adverse impacts. And that's what the service did here. And the district court's decision, you know, Holding you to the contrary really rested on a fundamental misinterpretation of the mining law, the Organic Act and the services regulations. I understand this might take you past the time you want to reserve, but we'll make sure you get a chance to respond. So don't be too nervous about the time. As I understand the government's position and the position in the FEIS, it is that because these lands are mining claims, they're analyzed in a certain way. And they are analyzed in this way because Rosemount has a right to deposit on these lands under the mining law. Now, if they don't have a right to deposit these, the waste rock and the tailings on these lands under the mining law, and they need to deposit them under some other provision. And of course it's national forest land and the forest service may decide to grant them the right. But the environmental analysis changes. And it might be more rigorous and it might be less favorable to Rosemont. So as I understand the case, it is critical to the support of the FEIS, as it is currently approved, that these have to be at least plausibly valid mining claims upon which the waste rock is to be deposited. Have I misunderstood? Well, Your Honor, the service's position is that the validity of the mining claims here don't matter because Rosemont's property interests aren't implicated in a mining plan of operations. And again, it's undisputed that there's a valuable deposit of copper. Maybe my question wasn't clear. Let me deposit two different worlds, both of them very clean, both of them legally clear, clearer than perhaps what we have here. In one world, Rosemont seeks to put its waste rock on mining claims that are their mining claims and indisputably valid. In the other world, Rosemont seeks to put waste rock on land as to which it has no claim whatsoever. It's national forest service land. Does the forest service analyze these two situations identically with respect to its responsibilities under NEPA? Yes, Your Honor, as long as it's on open federal lands. So the fact that these are, so you're coming back to your position. The fact that these may or may not be valid mining claims makes no difference whatsoever. That's not how I read the forest services analysis, I have to say. That's not how I read the FEIS. Well, I mean, Your Honor, there's multiple places in the record where the service recognized that validity of mining claims, you know, didn't matter to the mining plan of operations. So if, I mean, if you look at 3 ER 260, 3 ER 259 and over and over again, the service is recognizing that validity just simply is irrelevant in this case, because again, Rosemont's property rights are not at issue. These lands are not withdrawn to the mining law. Rosemont's not trying to patent any mining claims. It's not asserting a takings claim, any sort of issue where property rights would be implicated. It's just, that's not what's before the service. What's before the service is the mining plan of operations and property rights just simply are not implicated. Okay, good. Okay. I understand your position. We've taken you over the time. I'm sorry, Judge Fletcher, before we switch, can I follow up? So I want to make sure that I'm reading your argument. I think Judge Fletcher might be right that the agency made a decision based on a line of reasoning that seems slightly different than what is being advanced in this litigation. So I just want to make sure I'm clear. It seems to me what you're saying is that it matters that this is open lands and that that's the determinative thing because you're relying on the mining act and section 22. And this idea of the ability to explore and occupy openly and freely. Am I right? Yes, Your Honor. And that's why the whole claim structure and all of that doesn't matter. It's because that you're on open lands and you have this sort of very broad right that you're relying on. Correct. Would you agree that the rod and the EIS don't seem to hang their hat on that reason? Oh, if Your Honor is talking about the fact that the rod and the EIS were referred to the fact that Rosemont has, you know, mining claims staked over the project area like that, that is correct. And the service, you know, recognized that it didn't need to determine the validity of those claims. And that's another basis for reversing the district court's decision. So if the court, you know, doesn't want to address the interpretation of the mining law, you know, the government's argument is even assuming that Rosemont needs a mining claim to conduct operations under the mining law, then, you know, what is abundantly clear is that the service isn't required to investigate the validity of any of those claims. There's no requirement to investigate validity and the mining law under the organic act or under the services regulations. And so there's really, you know, two parts of the government's argument here. If I can follow up again, don't, don't worry that we're taking you over time. Everyone here will get a chance to say what they need to say, but I want to follow up on judge Huntsman's question. I'm looking at section 22, which is what the service relies on. It says that all valuable mineral deposits and land belonging to the United States shall be free and open to exploration and on loan and the lands in which they are found are open to occupation and purchase. In other words, as I read that, it is lands that have valuable mineral deposits. Those are the lands that are described in section 22. Is that right? Yes, your honor. Is there any requirement on the service to show that there are valuable mineral deposits? Two responses to your honor. First, the phrase valuable mineral deposits does not mean valid mining claim. If Congress had meant valid mining claim, it would have simply said that. I'm not asking that question. I'm asking about are there valuable mineral deposits whose obligation is to show that there are or not any. What if we know for sure or almost for sure that there are no valuable mineral deposits on these lands? Does section 22 apply? Well, in this case, your honor, again, I would bring you back to the fact that we do know that there are valuable mineral deposits. Again, it's undisputed that Rosemont has this large valuable deposit of copper. I'm sorry. Valuable mineral deposits in the land on which the waste rock is to be deposited. I understand the value of miserable deposits where they're seeking to mine. I get that, but no, we're talking about the land on which the waste rock and tailings are going to be deposited. I'm not at all sure that there are valuable mineral deposits there. The district court actually goes into some analysis of saying, it looks like there really aren't any valuable mineral deposits there. Sure. Your honor. There's no evidence in the record as to what's underneath the land where Rosemont proposes to place its waste rock and tailings. The service didn't do a validity determination. It didn't ask. Let me ask a question that makes the record even cleaner than I think it is for my purpose. I'm a question. Let me, let me ask you to assume that for the lands on which Rosemont reports or proposes to deposit the tailings and waste rock. I want you to assume there are no valuable mineral deposits within the meaning of section 22. Does section 22 apply? Yes, your honor. And here's why, because the production of waste rock and tailings are necessary to Rosemont's mining of its valuable copper deposit. And if the service were to prohibit Rosemont from placing this waste rock and tailings on federal lands that would unreasonably prohibit Rosemont's right to mine its large copper deposit. But, but the section 22 gives the right to occupy. And I gather the forest service relied on section 22 as to the, for the premise for the occupation of these lands with the, the overburden of the waste rock and section 22 says lands on which there are valuable mineral deposits. And I said, now, what about what if a land doesn't have mineral valuable mineral deposit? And you say that section 22 still does apply. You're doing, are you reading those words out of, out of that section? No, your honor. I, I'm reading section 22 to broadly refer to to lands and to the, to the use of open federal lands. Now the mining law and the agency's interpretation applies to both mineral and non-mineral lands. And, and what's underneath those lands, you know, only matters when there's a property right at issue. And once there's a property right at issue then you can stake a mining claim for mineral lands and a mill site for non-mineral lands. But again, property rights are not at issue in this case. Okay. Sorry for taking you over time. You've got, well, you tried to save some time and we'll give you some time to respond. Thank you, your honor. Is it Mr. Poon? Yes, your honor. May it please the court. Julian Poon on behalf of Rosemont Copper, I'd like to reserve two minutes for rebuttal. Let me start with three major points that I think address some of your honor's questions. First of all, judge Fletcher, claim validity doesn't matter at all. You don't even need a claim, valid or not in order to engage in mining related activity, such as storing waste rock and tailings. And that's why number two, the agencies, both the Forest Service and the BLM, have never inquired into claim validity every time before approving a mine plan of operations. Putting claim validity to one side, if the service is relying on Section 22, is there any requirement at all that there be valuable mineral deposits on the land? By the land, not the land, but the minerals of soil or square inches of soil directly underneath where the waste rock and tailings are to be stored. Let me pursue this then for just a minute, because as I understand it, the Forest Service relies on Section 22 to say that this land may be quote occupied. The word occupation is there in the statute, may be occupied by the waste rock and tailings put there by Rosemont. And so occupation is what's happening. Occupation is justified under Section 22 and you're saying, but there doesn't need to be valuable mineral deposit on the land in order to support the occupation? Not directly underneath, but as long as the lands writ large are conceived of generally or broadly, as the Supreme Court did in the three cases we cited post enactment of the mining law, as long as they generally qualify as mineral lands rather than agricultural lands, that's sufficient, because this whole area is a historic Rosemont and Hilbitcha mining district. That's undisputed. Both the 955 acre pit where it's undisputed we have valid patented and unpatented mining claims. And then the 2,447 acres where the waste rock and tailings storage right next door are going to be stored. But let me pivot. The service is relying on much more than just Section 22, Your Honor. It's for well over a quarter of a century, formal notice and comment rulemaking, the 228.3 regs, which are mirrored by the interior departments, 3809.5 regs. They've defined mining related operations as quote, all functions, work and activities in connection with dot, dot, dot, dot,   dot, dot, dot, dot. And all use is reasonably incident, there too, regardless of whether set operations take place on or off. Mining plans, which goes to judge Hunter's point, it really doesn't matter. And as the government was explaining, as long as the land has not been withdrawn from mineral entry, and that's really what plaintiffs are trying to do here. They're really trying to get something that neither Congress. The executive has done here, which is to withdraw these plans from mineral entry. As long as the land has not been withdrawn from mineral entry, then the forest service has the authority to. And I think this goes to the third major point I wanted to make, which was some of the judge Miller's questions to Ms. Yell. The record is clear. There's extensive regulation that's required here, including under the 228 mining regulations, 228.8 specifically requires the service to quote minimize adverse environmental impacts and other harms. This is pursuant to the statutory mandate under section four 78 of the organic app, which requires the service to protect national forests against depredations and destruction. And we've committed to well north of $50 million of extensive mitigation, monitoring and other requirements, And this is a result of the careful balancing the agency undertook    Allow for. For mining. To be able to. Do whatever they are. While it will be able to. Inhabit. The land. There afterwards. And this is a result of the careful balancing. The agency undertook here. Pursuant to its dual mandate to both protect the national forests. And to. Allow for. For mining. Section four 78 of the organic X specifically. Restricts. The service from prohibiting. Mining or mining related activity on national forest. This court in Weiss held. That the service. Pursuant to the organic. 228 regs. May may not quote unreasonably circumscribe. The development of the mineral resources of the national forest. And the last thing I'll point out to you,  There were some questions. Related to this about what. And the. Showed. As the government noted. It's not just. Two 59 and 60. It's all over. That. 2400 plus. Page. And the 142 page. The service repeatedly recognized pursuant to the formal notice and comment regulations. I read to you from both major federal land managers. That they have the authority. It didn't matter whether any of this was on a mining claim or not. Let alone whether there was valid mineralization underneath, which is really not something for the district court to, to inquire into. And this was all. Yeah, I would point this court. To its recent decision in Pacific choice seafood, which I believe two members of the panel. Joined him where they said. It's an agency decision is not a model or an ideal of clarity. But we can reasonably discern the path. The agency took, we can look at both in word and deed. The agency repeatedly said it could reject unreasonable mine plans. Those that didn't protect the environment enough. That's the check on open federal land. If the agency is not satisfied. It can prevent any mine plan from going forward. Claim validity has, has nothing to do with protecting or advancing the environmental. Cultural and other interests that plan is. And the district court. To promote. It's actually an arbitrary definition. It actually hurts. Environmental and cultural values, because as the government. I'm going to explain it as for pie brief. The district courts on a claim limitation with tidy expert agencies. And determining where and how best to store. Waste rock and talents. And it makes no sense to have a role. Where you're required to pile. All the waste rock and killing. Right onto the surface. Of your claim. That would. Under the district court's reasoning could potentially invalidate the claim. So basically you're done. We're done for you. And we're done. If we don't, we're caught in a car. Catch 22, because under the district court's rule, we can't place waste rock and telling. Off a claim that would be unauthorized and placing it on a claim. Couldn't invalidate the claim, especially where the entire claim contains valuable. Could you address the. The provision in section 42 that allows you to claim a mill site. That's not. Separate from your claim. It seems like your understanding. The statute would make that superfluous. You explain that. No, you're on. I don't think it would. The section 42 on mill sites simply provides an optional alternative. That's not feasible here. There's nothing in the statute. Or in any authority I'm aware of that says we have to avail ourselves. Of that alternative. And that alternative is rather problematic. Because it's limited to non mineral lands. So if, if Congress meant. Or the agency meant to say, this is the only land you could. Store waste rock and tailings on him, but we're talking about. Taking a century and a half worth of established practice. And turning it on its head. That's this is not how hard rock mining. Has ever worked. So, to impose a claim validity requirement. Anywhere in the United States and to impose a claim validity requirement. With would be crazy as the BLM itself is explained. Each validity exam is an intensive. On the ground examination. It costs 12,000 $80,000. There's over a quarter of a million active mining claims on federal public lands. And the BLM has already explained, This is not an alternative to non mineral land. This is not an alternative to non mineral land. And this is in the recent birth, birth decision that was cited. That would blow their budget sky high several times over for something that really doesn't advance the agency's goal. Protecting federal land, the environment on it. While at the same time, Allowing the kind of mining that Congress has repeatedly. Sought to promote and encourage on open federal lands, lands that have not been withdrawn. From from mineral entry. So this, this really is without exaggeration. It would be an unprecedented decision. And a major step backwards for this. Court to affirm the district courts.  We're all in this. Role that. Somehow. Mining related activities limited to the four corners of the ballot. Simply have never been the law. We've done the same thing to you as we did with. We've taken you over time. We'll give you some chance to respond. I appreciate that. Your honor. Thank you very much. No. The other side and you've split. I'm not sure which one of you wishes to go first. Exactly. Thank you, your honor. My name is Heidi Mackintosh. I'm going to go first this afternoon. I represent the. The Hopi tribe and the possibly Yankee tribe. The. The forest service is correct. That this case is not about whether Rosemont can mine its lands. Where it has a valuable mineral deposit, where it has. Unpatented claims there. The court has been right to focus on the fact that this case is really about whether Rosemont can reach beyond those lands. To lands that have no valuable mineral deposit. Simply because they are related to the mine operations elsewhere. Now, I want to emphasize that this is no simple box checking duty. To ensure that there are valuable mineral deposits on this land. But we were talking about here is land. With which, with which the tribes have a 10,000 year history. Their ancestors are buried on this site. There are sacred springs and other sites. That are important to their cultural traditions. They, there are village sites and other cultural sites. That will be obliterated. If this plan goes forward as Rosemont would like to do. These are all resources that the forest service has the authority to protect under its organic act. And in fact had protected for many years. Under its land use plan. Until it stepped back and reversed course. To make room for Rosemont's waste. Pile and in deference to Rosemont's asserted, right. And this is where the forest service went wrong. The forest service ignored the plain meaning and the terms in the statute that required a valuable mineral deposit. Can I, I want to interrupt you right there because. I mean, we have a complicated statute. You know, sort of old fashioned language and trying to figure out what that means and some old history here. But so taking a step back from that, just the practical question. That I can't, that I'm struggling with a little bit with the plaintiff's position is. How does it make any sense that we would pile waste on top of valuable mineral land? Because if our purpose and our policy is to explore and utilize valuable minerals, why would we make a system where you have to pile waste from that activity right on top of something that could be valuable? Well, first, a general expression of policy and support of mineral extraction can't override the specific terms of the statute. And to the point about the practical implications of this, you have to think back in 1872, mining operations were much smaller. And Congress gave mining claimants the rights to locate claims and protect the grounds on which both the minerals and adjacent lands could be utilized for purposes of their operations. The size of each mining claim that can be staked on the ground is about the size of 15 football fields. And so that could easily accommodate many cases, extraction of the mineral and then use of the rest of the ground for other purposes like the deposition of mine waste. And the other thing is that Congress provided miners an opportunity to stake mill sites for exactly this purpose. So this was the congressional scheme. The problem is that Rosemont's mine doesn't respect the limits or its proposal to put the tailings and waste on this property doesn't respect the mining law. And we heard from the Forest Service, essentially in an argument in which the tail is wagging the dog, that the Forest Service accepted Rosemont's assertion of rights because it needed to do that so Rosemont could pursue its mine. But that's exactly the opposite approach. The Forest Service should have ensured that Rosemont's mine plan met the requirements of the general mining law. I'm just going to, is there anything in the record that shows us that sort of mining practice historically was that that's where you put a mining waste for lack of a better term on valuable mineral land? Was that the practice? And is there something in the record that shows us that? So in the record, I don't think there's anything in the record of this case that discusses that, but in the cases that we have seen, you read them and some of the cases that we cited in our brief are absolutely clear that a valuable mineral deposit is required. And in some descriptions of some of the mining activities, you can see that materials were deposited on the claims. But again, the key here to the resolution of this case. If I can interrupt, since the time the Mining Act was passed, we did not have large open pit hard rock mines. This is a somewhat different practical problem, which is why the mining law is written the way it is. But I've got a different question and that is assume for the moment that you prevail and that Section 22 is not available as a justification for the deposit of the waste rock and the tailings on this land. Is Rosemont entirely without options of putting it anywhere? Or is the Forest Service simply going to have to analyze this in a different fashion? Well, Rosemont has a lot of options, and they have been known to be available in situations like this for quite some time. We cited an article from Kimball and Parr dating from 19, I believe it was 77, in which they outlined all of the options which include the mill sites, which include land exchanges, which include configuring your mine so you can accommodate the overburden on your own property or property to which you have valid claims. You can purchase property elsewhere for purposes of storing your claims or storing your overburden. All of these are available to Rosemont. Is there any feasible way for Rosemont to use Forest Service land and for the Forest Service to allow it under some provision other than provisions of the Mining Act? Well, in our argument over the district court, we cited Section 251 of the regulations. Because these activities aren't authorized under the general mining law because the lands that Rosemont is seeking don't contain a valuable mineral deposit, our argument is that they fall outside of 228 and into other provisions with which the Forest Service can manage the use of federal public lands. And under those alternative approaches, the Forest Service has much broader authority to limit the impacts to really unique and special places like the site that we're talking about today, where it has a responsibility to protect against depredations under Section 478. But regardless really of which regulation you apply, the bottom line is if there's no valuable mineral deposit, there is no right to occupancy. I mean, the Forest Service and Rosemont are essentially analyzing or interpreting a mythical statute that would say something like lands belonging to the United States shall be free and open to occupation for mining-related purposes. But that's not at all the statute that we're looking at here today. Section 22 clearly requires a valuable mineral deposit and Supreme Court authority going back over a hundred years has affirmed time and again that a valuable mineral deposit is required to justify occupancy of federal public lands. I'm sorry to interrupt you. Could you address Section 228.3 of the regulations, which your friends on the other side cite, which Subsection A of that seems to contemplate that there can, when you have a claim in one place, you can conduct operations somewhere else. And it says, you know, regardless of whether those operations take place on or off mining claims. So what's your answer to that? Right. Well, it's not lawful to use valid claims elsewhere to obtain rights to non-mineral lands someplace else. But the other thing is that the regulations can't grant more than what the statute provides it. Rosemont is simply circumscribed by the specific conditions expressed in the 1872 law. It's really no different than any other developer who wants to put in a development and must comply with the limits of city zoning and other requirements. In principle, it's essentially the same. I have one more question. I guess following up on that, it seems like then you agree with Mr. Poon that if we agree with your interpretation of the statute, that we sort of upend how these agencies have handled this issue for a long time. You know, I don't know that that's the case. I understand that Mr. Poon is making that argument, but it's not relevant for purposes of this case, even if it is true, because the court must apply the statute as written, and it must give meaning to every term in the statute without rendering any of them superfluous or insignificant. And it shouldn't read 22 in a way that deprives the rest of the statute, 23, 26, 29 is superfluous. If you read 22 in the way that the appellants are interpreting it, there would be no need for anything after section 22, because mining operators could simply occupy federal public lands without satisfying any of the other requirements in the section or, or needing to get mill sites as Rosemont could have done in this case. So the problem here is really one of Rosemont's own making. It's designed a mine plan that simply exceeds the scope of the rights granted to it under the general mining law has other solutions. It should have pursued those other solutions. And the forest services error wasn't ignoring its duty under the statutory requirements of value, valuable mineral deposits were actually met in this case before it decided to turn over this property to Rosemont was such a devastating effect for the tribes and for other public resources. Thank you. Thank you. Mr. Flynn. Thank you. Your honors. Good afternoon. May it please the court. Roger Flynn for the conservation groups. There's a lot of mining law and public land law here, but when you boil it away, this is a statutory construction case. And is the agency's decision supported by the evidence in the record? And we think that the forest services actions here fail on both accounts. And when the forest service in response to your honors question, that valuable minerals are irrelevant. That's what they told the district court irrelevant. The requirement for any sort of rights under the mining law. They say, well, we don't, we just assume them. And if I beg the court's indulgence, I'm just going to have a few Supreme court cases in ninth circuit circuit cases. I think destroy their argument. For example, the union oil case from the Supreme court, which both sides have cited from two from 1919 quote, It is clear. In order to create valid rights against the United States, a discovery of mineral is essential. And remember here, what the forest service did is, and we quoted them the record of decision in the EIS. They, the company has a right. And an entitlement to use all these waste up lands. And so that was the overarching view. They have a right and an entitlement, but where's that right come from? It cannot come from the two 28 regulations as the company has argued. And the forest service argued as Ms. McIntosh correctly said, statutory rights come from the statute. And so here's one of the leading ninth circuit cases that we cited the Davis v. Nelson from 1964. Quote, it is clear under the mining law and the regulations that a discovery of valuable mineral is the scenic Kwan, non of an entry to initiate vested rights against the United States. I had to look that up and see Nate Kwan on means the indisputable in the unnecessary, absolutely necessary ingredient. And so the ninth circuit in the Supreme court says the valuable mineral deposit requirement is absolutely necessary to assert a right against the United States. We pointed that out below in the forest services answer to the district court is that's irrelevant. We don't check valid claims. We don't check valuable minerals. We just assume they have a right. There's another statute here that the, the other side completely leaves out of their briefs, but we had raised it. And so did the district court that common varieties act of 1955 completely eliminated the ability of anybody to file mining claims on lands containing common variety, rock, and stone. It had to be a valuable mineral, copper, gold, et cetera. And the record here is very clear. Judge Soto went into a deep dive into the agency's own documents. So for a statement saying there's nothing in the record regarding the minerals, they spent a whole chapter on the EIS talking about there are no valuable minerals out by the rock where the waste dumps are going to be. But what did Rosemont do? They filed over a hundred claims, mining claims on those lands. So on its face, you can't do that. You can't file mining claims on what your own geologists and what the agency's own geologists say are invalid claims. Judge Fletcher, your first question dealing with invalid claims. One of the most famous mining law and public land law cases of all time was the Cameron case where future Arizona Senator Ralph Cameron filed claims that be eventually became a green Canyon national park. And he was charging people. He wasn't using them. There were no valuable mineral deposits there. And the Supreme court said once and for all, there are no rights against the United States if the claims are not valid. And here the evidence is overwhelming. So not only did the agency ignore the statute, they ignored the evidence in the record. And then those are the two hallmarks of an arbitrary and capricious decision. And the argument that we don't need mining claims at all on these lands, even though they filed mining claims on it, we'd like to point the court to the 1985 lock court decision from the Supreme court and the 1987 California coastal commission. If again, I may indulge with a quote from the California coastal commission case quote, if a person locates a valuable mineral deposit on federal land, if they do and perfects the claim, the claimant shall have the exclusive right of possession and enjoyment of all the surface, including in the claim. If they have a valuable mineral deposit. And if they have a claim specifically relying on section 26 of the mining law. And so did the lock case relied on section 26 for essentially the same position. So they're just ignoring two of the critical provisions of the mining law. And to say that, well, judge Soto was wrong. Yes, ma'am. I mean, I guess the government started their argument by sort of distinguishing, you know, disputes about property rights versus I don't think, I don't think I'll use this term of use or occupancy rates. And in your view, is there just no such thing as anything beyond the property rate? I mean, all the things you're quoting make total sense when you're talking about the assertion of a property rate and excluding others. And that doesn't seem to be quite what we're dealing with in this space. Well, that's what they're doing. If there's anything that those waste dumps are doing is excluding the public. I think a good case to look at is the USV Allen case from the ninth circuit, 1978. That says you need a viable mineral deposit to have a surface right to the land. And so this, I think there's an artificial distinction between the rights to occupy, to exclude others and this property, right? You know, the real property right that comes down the line is if you want to go to patent and that's in section 29. And section 29 doesn't come up in this case. They're not going for patents. They're asserting a right. And the forest service said, yes, you have a right and entitlement to use these lands. And where's that right come from? It's got to come from the statute because they're saying it's a statutory right. And they're just ignoring the valuable mineral deposit. You know, if there was evidence in the record that there were valuable minerals out there and they were not common varieties, well, they might have a case, but the evidence is completely against them. There is no valuable mineral deposits. The valuable mineral deposits are two miles away in the mine pit. So if the Allen case continues, it is clear that admittedly invalid mining claims cannot be used to assert rights. Contrary to those of the general public, these are invalid mining claims. You can't locate mining claims on lands that the, their own documents say are common varieties. I'm sorry. Can I interrupt assume for the moment that you're correct? That the Rosemont does not have valid mineral mining claims and indeed could not get valid mining claims on this property. Because under section 22, there are no valuable minerals underlying those claims. Is Rosemont. Without the ability to put its waste rock and tailings on for a service land. The key there, your honor is they wouldn't have a right to do it. And that's the heart here. The agency says they have no discretion to impact the bottom line of the company. Judge Miller, you talked about how they admitted the volunteer, but here's an option. That's my question. So if they don't have a right under section 22 and the forest service has some ability, as it were to push back, what happens? Well, your honor, if you remember the case I argued in front of you about 10, 12 years ago, they can do a land exchange. That was the center for biological diversity versus interior case. And that's what copper companies do in Arizona. They can get it from the agency. And on remand, the agency just approved that. So to get these extra lands, they can do a land exchange. Also another copper company in Arizona, an even bigger operation got one legislated by Congress. So there are ways to get these massive land uses by the forest. So, you know, there's a combination of regulations. You can do land exchange. You can do special use permits for the truly temporary uses like power lines and roads and buildings. Those are going to be removed. Not these waste stops. So I think there are other options. If I may, in my remaining time, I'd like to talk about judge Miller. The judge Miller, when you talked about how the agency admitted that they, their use of the materially interfere standard was wrong. Well, that was the basis for a large part of the record of decision. They said in numerous places, well, we can't materially interfere with the company's bottom line. We can't impose mitigation measures that are too expensive. And we cited these things. And also critically, they eliminated over a two dozen standards in the binding forest plan to protect cultural resources and environmental values. Why? Because they said, well, if we don't get rid of these standards, that would materially interfere with the company's desired profit plans here. And I do not have the legal authority to do that, but here in arguments to the court or in the papers, they admitted that was wrong. The material interference standard is not a restriction on the company's regulation of the mind. So on that grounds alone, The record of decision is, should be vacated and as in violation of the organic act and their own regulations on the law of the organic act, they can't basically destroy the, the public lands without meeting that standard. And they, and they did not. So I think my time's about up, but I didn't know if you had questions, Your honors. Any further questions on the bench. Okay. Thank you very much. Thank you much. Ms. Yellow, you had sought to reserve some time. We took you well over time. Let's put two minutes on the clock. Thank you, your honor. Just a few points on rebuttal. First, the panel talks quite a bit about historical practices under the mining law. And I think what is, is clear in this case is that the mining law has been around for a very long time. And the service and interior have interpreted the mining law to allow miners like Rosemont to use open federal lands. I'm including for their waste rock and tailings. I'm not, it's been a longstanding practice of the agencies and. And a longstanding understanding of, of how the mining law works and Congress has had many opportunities to change the mining law and Congress has declined to do so. And so while we understand that ultimately plaintiffs are, you know, dissatisfied with the mining law and the fact that these. Can I interrupt for just a minute? You're talking about longstanding practice. Do you have a case where the practice is to allow an open pit mine? To deposit great amounts of waste rock and tailing on land that has no valuable minerals. That's for a service land. Can you point to a practice that does what's what's an issue here? Your honor. No case has addressed this question on either side, but what I can point to you is the services interpretation of operations, including. Waste rock and tailings on or off claims. This is consistent with interiors understanding of what mining operations are. It's also consistent with two of the interiors and opinions. Also, interpreting the mining law to allow uses of open federal lands for these purposes. And as the expert agency in charge of administering the mining law, interior is entitled to deference for those legal positions. And so that is what I would point the court to, you know, in support of that. Also, the service repeatedly talked in the record about its longstanding policy of not investigating mining claims. If you look at ER two 60 year, two 59 year, four 99, the service repeatedly recognized that mining operations can occur on or off claim. And that it didn't need to investigate the validity of mining claims when approving plans of operations. And I think it's important to mention, you know, the distinction between the statutory right to use land and property rights that are implicated. You in situations that are not at issue here. And you heard a lot from my friends on the other side about cases dealing with, with property rights. And I would draw the court to the fact that again, what is being challenged here is the services approval, the plan of operations. You're over your two minutes. If you'd like to sum up. Sure. Your honor. Ultimately plaintiffs are dissatisfied with the way that the mining law works and Congress has not seen fit to change it. We believe the district court's decision should be reversed for three reasons because the mining law doesn't require the service to investigate validity of claims. The organic deck doesn't require it and the services regulations do not require it. And for those reasons, we'd ask the court to reverse. Thank you. Thank you. Mr. Cone. Would you please put two minutes on the clock? Thank you, your honor. It cannot be the law and it's never been the law that you have to pile all your waste rock and tailings on top of your about valid and valuable mining claims. And so I think there's an element and I think there's a recognition of that. Your honor asked a few times, how else could the Rosemont use the forest service land here? If I might just ask for a quick reset, there's, there's an element with respect to some apples and oranges going on here. I think claims and ballot claims, they only have to do with asserting potentially permanent and exclusive possessory rights. That's what claims are for, but we're not asking for that. What this case can be. You said you're not asking for permanent possessory. Now this may be a play of words. I don't think you're planning on moving the waste rock. So that's permanent. Now maybe it's not possessory because it's waste and you don't want to possess it, but you've certainly altered the characteristic of the land on which you're putting the rock and you're not going to go back and fix that. Correct. No, that's not entirely correct. Your honor, the land will be fully reclaimed and restored to say public use after for   So I think the point is that these kinds of permanent alterations to the topography. Of national forests are not uncommon. They're working for us. They're not national parks. They're meant for economic reasons, but the larger point is, is we're talking about possessory rights. And then just what this case comes down to is can the agency. As it's been doing for decades. Authorize.  And this is the first time. Carefully regulated. Federal oversight. Use. By private miners of open federal land. This has happened. Even well before the forest services. Well, before the general mining laws enactment, the history. We cited the Conway case is undisputed. That miners had a common law rights. To the extent that they could deposit their waste rock and. On vacant. An occupied public domain. Nobody can test that on mill site. There's been talk of a number of alternatives, no sites. Land exchanges and whatnot. I would point judge Miller. To. Section 42. The text. It says only may. You may do that, but you may. For what reason again, to get the kind of. Possessory exclusive rights. If you want to exclude others from your smelter site. Or from your mill site. And historically, no sites weren't even used for depositing. Then you could use section 42. Or you could use land exchanges. And if anything, plaintiffs have spoken repeatedly about. Superfluity. If anything, what rendered. It's their reading of basically telescoping. Section 22 into all the subsequent provisions. That actually talk about claims. And tell you what rights you have, what obligations you have. But that's not what's going on here. If you'd like to sum up, you're over your two minutes by quite a bit. Certainly your honor. What's going on here is just a use of section 22. Well-established. It warrants administrative deference. Under Chevron and a variety of doctrines, certainly McMaster. And the government has observed as well. And. And this is all subject to extensive. Regulation your honor. Judge. How else can we use the forest? There's a rigorous regulatory scheme in place. The 228 mining regulations. They don't dispute that the two 51 special use regulations. They asked for. Are categorically ruled out and excluded. By the terms of two 51.5. Oh, and two 51.5. And the two 51.5. Or E one. Little nine. Also says you can't use the special use. For disposing. You to reverse. That wasn't quite a summing up. That was an elaboration, but thank you very much. Thank you. Thank all sides for your. Very helpful arguments from everyone. Thank you very much. The case of center for biological diversity versus us fish and wildlife. Now submitted for decision. And we're now an adjournment for the day. Thank you very much. Thank you. Thank you. Thank you.
judges: W. Fletcher, Miller, Hunsaker